Green, Judge,
delivered the opinion of the court:
This is a suit to recover an alleged overpayment of $6,128.81 on excess-profits taxes for the year 1917. The books of plaintiff were kept on an accrual basis, and the Commissioner of Internal Revenue in computing the invested capital of plaintiff for the year 1917 deducted its 1916 Federal income taxes amounting to $4,622.86. In order to determine the amount available for dividends in 1917, the commissioner also deducted a tentative tax for that year. Both of these deductions are alleged by the plaintiff to have been erroneous, and it also claims that even if these deductions were correct there was error in determining the amount of accrued income for application upon dividends to which reference will hereinafter be made.
As there is no dispute over the facts, the question to be determined with reference to these deductions is whether they should be made during the taxable year or during the year when they were due and payable.
Considering first the deduction of the taxes of 1916, we find that the balance sheet of plaintiff, made as of date December 31,1916, showed that its capital stock was $300,000.00 and surplus $199,845.56. The total of these items, $499,-845.56, was treated as the invested capital as of that date, which indicates that the amount of the income taxes for 1916 ($4,622.86) had not been deducted at that date. This is in effect conceded in plaintiff’s printed brief wherein it is said in substance that this sum was a part of the plaintiff’s undivided profits on January 1, 1917, and not due and owing *567 until March 15, 1917, and that its deduction upon or before January 1st was erroneous. The theory of the commissioner was that where the books were kept on an accrual basis, taxes should be deducted during the year for which they were levied and assessed; and this not having been done, the taxes of 1916 were accordingly deducted by him in ascertaining the invested capital at the close of the year 1916, or, what is the same thing, on January 1, 1917.
,Was the commissioner correct in ruling that the taxes of 1916 should be deducted in that taxable year ?
The question here arising has been directly passed upon in the case of United States v. Anderson, 269 U. S. 422. In that case the action of the commissioner in determining the munitions tax of the plaintiff for 1917 was reviewed. The taxpayer had deducted the 1916 tax in its return for the year 1917. The commissioner held that the munitions tax of 1916, paid in 1917, “ should have been deducted from the appellee’s (taxpayer’s) gross income in its return for 1916.” The sole question in the case was whether the action of the commissioner was correct. The books of the taxpayer having been kept on an accrual basis, the court decided that the commissioner had ruled correctly; thereby in effect holding that where the books were kept on an accrual basis the tax was deductible in the year for which it was levied and assessed, although it did not become due and payable until the following year. As there has been some claim that this decision depended also upon the fact that the taxpayer had set up upon its books a reserve for the payment of taxes which had accrued, it becomes necessary to consider some of the language used in the opinion, which will show that the case turned upon the fact that the taxpayer kept its books upon an accrual basis. It is true that the additional fact that it set up in 1916 a reserve for the taxes of that year was also mentioned, but this was by way of argument in showing the manner in which this system of bookkeeping was carried out. No bookkeeper or accountant would for a moment contend that where boobs were kept upon an accrual basis-that items of liability which had accrued in the year 1916 should be charged or deducted other than in that year, *568 even though they matured later, and the Supreme Court specifically held that the “tax here in question did not stand on any different footing than other accrued expenses.” As the plaintiff in the case at bar kept its books on an accrual basis, it took credit on its books in 1916 for items which had accrued in its favor, but which did not become due and payable until a later year. It would seem clear that if the plaintiff, in estimating its income for application upon dividends or for increase of its surplus and invested capital, could use items which had accrued in its favor, it also must permit deductions for liabilities that had accrued against it. On this point the court said in the Anderson ease:
“ In a technical legal sense it may be argued that a tax does not accrue until it has been assessed and becomes due; but it is also true that in advance of the assessment of a tax, all the events may occur which fix the amount of the tax and determine the liability of the taxpayer to pay it. In this respect, for purposes of accounting and of ascertaining true income for a given aeeomvbwig period, the munitions tax here in question did not stand on any different footing than other accrued expenses appearing on appellee’s books. In the economic and bookkeeping sense with which the statute and Treasury decision were concerned the taxes had accrued.” (Italics ours.)
The action of the commissioner in the instant case in deducting the 1916 tax was therefore correct.
The action of the commissioner in deducting a tentative tax for 1917 from the net income for that year in order to ascertain the amount available for dividends in that year was fully sustained by the decisions of this court in the cases of D'Olier et al. v. United States, 61 C. Cls. 895 (certiorari denied 273 U. S. 700), and Child and Fullerton v. United States, 63 C. Cls. 356. The D'Olier case is an absolutely parallel case with the case at bar in every respect except that a partnership instead of a corporation was involved, which fact is not material to the decision. The same tax and the same year were involved and likewise dividends in excess of the amount of accrued income were made and the books kept on an accrual basis. The computation of the deductions to be made from invested capital *569 was made in a different manner, but the effect was the same, and the sole question in the case was the same. The decision in the D'Olier case was made upon the authority of the Anderson case, wherein, as applicable to the D'Olier case and the case at bar, in addition to what has already been quoted,, it was said: - -
“ The appellee’s true income for the year 1916 could not bave been determined without deducting from its gross income for the year the total cost and expenses attributable to the production of that income during the year.”
In the case at bar the deduction was made from what was called the net income, but the result is the same in ascertaining the amount available for dividends whether it be deducted from gross income or net income. If the rule laid down by the Anderson case was applicable in 1916, it must also have been applicable in 1917.
Counsel for plaintiff argue against this practice, in the case now under consideration, that the excess-profits statute did not become a law until October 3, 1917, and therefore the tax imposed thereby could not have accrued at the time when either of the dividends were made. This, we think, is immaterial. The law was retroactive and the tax imposed became a liability on October 3, 1917, and should have been a charge upon the books of the plaintiff from and after that date; and as the reduction in invested capital is prorated through the year, an approximately correct result was obtained. It will be' noticed also that the munitions tax, which did not become a law until September 8,1916, was held in the Anderson case to have been properly deductible in that same year. We think the fact that the excess-profits tax was not imposed until October 3, 1917, does not prevent its being deductible in that year when the books'are kept on an accrual basis.
Our attention has been called to several decisions of the Board of Tax Appeals which, it is contended, announce a view opposed to that expressed above. We have examined with care the cases cited and others on the same subject rendered by the Board of Tax Appeals and find that in none of them did it appear that the books of the taxpayer *570 were kept on an accrual basis. For that reason we find nothing inconsistent in these decisions. We have also examined two recent cases from different Circuit Courts of Appeals which involve the same general subject. In so far as these cases imply a criticism of the decision in the D'Olier case, it would seem that it had not been observed that in that case the books of the taxpayer were kept on an accrual basis. Otherwise, as there is no showing that the books were kept on an accrual basis, it is not necessary to consider the ruling therein made.
One other question remains to be determined in computing the amount of accrued income at the time the dividends were made. The commissioner took the average monthly income on the basis of the net profits for the whole year. This method would unquestionably be proper if there was no evidence from which to determine the amount of accrued income at the time when the dividends were made. But the evidence shows that on June 30, when the last dividend was made, profits had accrued to the amount of $160,166.16, and only $12,908.29 for the remainder of the year. From this counsel for plaintiff argue that there was sufficient on hand of the profits to pay this dividend. This would be correct but for the fact that a dividend of $150,000.00 had been paid on January 14 which used all of the profits up to that date and required a large amount to be charged to the surplus or invested capital. There is no evidence to show what the profits were on January 14, and they therefore have to be estimated in any event. Whether under the circumstances the profits should be averaged on the whole year, or .whether in view of the fact that both of the dividends were made within the first six months, the profits of which are shown, the average of this six months should be taken, presents a difficult question. But as the amount of profits for the first six months is shown, it seems hardly equitable to use a method which would in its practical effect give the plaintiff credit on the dividends for only about half of the amount of profits which had actually come into the treasury of the company. On the whole, we think that the average for the six months should have been taken in computing the amount of profits that should be sub *571 tracted from tire dividends in order to determine the amount to be deducted from the capital and surplus of the previous year to ascertain the invested capital for 1917.
In this conclusion we are supported by the final opinion rendered in this case by the Committee on Appeals and Review of the Treasury Department, which opinion states in substance that if the claim of the plaintiff with reference to accrued profits is supported by the evidence, the method which we have approved should be followed. Evidently such was the practice of the Treasury Department, but for some reason not shown by the evidence it was not followed.
Making the computation with reference to the amount of accrued profits to be applied on dividends on the basis of the amount which had accrued in the first six months, and otherwise computing the tax in the manner followed by the commissioner, we find the correct amount of plaintiff’s taxes for 1917 to be $70,870.90. On the original and amended returns, plaintiff had paid $67,710.99. Deducting the amount thus paid from what we find to be the correct amount of tax, we find that the additional tax due was $3,159.91. The additional tax paid and for which refund is asked was $6,128.81. Plaintiff has therefore overpaid its taxes for 1917 in the sum of $2,968.90, for which amount with interest it is entitled to judgment. It is so ordered.
Sinnott, Judge; Moss, Judge; Geaham, Judge; and Booth, Chief Justice, concur.